Jennifer J. Middleton, OSB 071510
jmiddleton@middletonlee.net
Middleton & Lee, PC
245 East 4th Avenue
Eugene, OR 97401
Phone: 541/683-2506
Fax:    541/683-3149
    Attorneys for Plaintiff

FILED 09 JUN '11 12:06 USDC-ORE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| SKYE V. PREUSSNER,<br><br>Plaintiff,<br><br>vs.<br><br>OZ FITNESS OR, INC., and OZ FITNESS HOLDING CORP.,<br><br>Defendants. | Case No. 11-6193-TC<br><br>COMPLAINT<br><br>(Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; Family & Medical Leave Act, 29 U.S.C. § 2611 *et. seq.;* ORS 659A.030; ORS 659A.183)<br><br>*Demand for Jury Trial* |

## JURISDICTION

1.

These claims arise under Title VII of the Civil Rights Act of 1964, as amended; the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611 *et seq.*, the Oregon Family Leave Act, ORS 659A.150 through 186, and Oregon law against discrimination in employment, ORS 659A.030. This Court has jurisdiction over the federal claims under 42 U.S.C. § 1988, 29 U.S.C. § 2617, and 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

ORX60000 6560

## PARTIES

2.

Plaintiff Skye V. Preussner at all material times has been a resident of Oregon. She is female.

3.

Defendant Oz Fitness Or, Inc. is an Oregon corporation wholly owned and operated by defendant Oz Fitness Holding Corp. It owns and operates two fitness clubs in Oregon where it employs over fifty people. Its President and principal owner is Ian Riley, a former bodybuilder from Australia.

4.

Defendant Oz Fitness Holding Corp. is a Delaware corporation with its principal place of business in Spokane, Washington. Oz Fitness Holding Corp. owns and operates defendant Oz Fitness Or, Inc. and its two fitness clubs, as well as six other clubs in Washington State and Montana. Its President and principal owner is also Ian Riley.

5.

Defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. were at all relevant times joint and/or single employers of Skye Preussner. They are collectively referred to herein as "Oz Fitness." At all relevant times, Oz Fitness employed over fifty people, and over twenty-five in Oregon.

## FACTS

6.

Skye Preussner began work as a sales representative for Oz Fitness (formerly 24 Hour

Fitness) in 2001. In 2004, she became General Manager of the Gateway location in Springfield, Oregon.

7.

Skye Preussner worked full time on a salary basis. Her typical hours were from around 9:00 in the morning until around 8:00 at night, Monday through Friday.

8.

Regional Sales Manager Michael Card, who was Skye Preussner's direct supervisor, sent out emails daily to staff that broadcast every club's performance numbers. Emails written by Michael Card contained sexist references that reminded Skye Preussner, and publically stated to her colleagues, that management perceived her to be inferior to her male colleagues because she was female.

9.

Examples of Regional Sales Manager Card's comments include but are not limited to:

9.1   "Shane is getting beat by a girl and crying like a baby."

9.2   A male manager was "hitting like a girl."

9.3   To a female doing well: "not bad for a girl."

9.4   As a challenge to Skye Preussner: "Your goal, should you accept the challenge (it's ok if you don't cause your [sic] scared, cause you're a girl) is 20%."

9.5   Referring to Skye Preussner, in a group email to all managers: "I understand that you're just a girl, that's why you couldn't answer the questions."

10.

In December, 2008 or January, 2009, Skye Preussner informed Oz Fitness management that she was pregnant with her first child.

11.

In the spring of 2009, President Riley met with Skye Preussner and her co-worker, Gateway Operations Manager Joy Muller. Membership sales at all of Oz Fitness' clubs were doing poorly and he talked with them about the need to reduce expenses, especially payroll. He discussed the options he was considering for the Gateway location, which included re-negotiating the terms of the lease, dropping the pool facilities, moving to a different location in the area, or even opening a second club in the area. He informed them that he intended to have Operations Manager Muller run the club while Skye Preussner was on maternity leave, and asked Skye Preussner to train Operations Manager Muller on membership.

12.

Around the same time, Oz Fitness management informed Operations Manager Muller that they were not certain whether Skye Preussner would come back after her maternity leave, or whether she would be able to work the long hours necessary for the job. They were exploring options to handle it such as having someone else take over Skye Preussner's duties.

13.

President Ian Riley decided not to close the club, and he maintained all of the original space under the lease, including the pool.

14.

On June 29, 2009, Skye Preussner applied for twelve weeks of maternity leave under the Family and Medical Leave Act and the Oregon Family Leave Act, to begin August 10, 2009. Her application was approved.

15.

A few weeks before she was due to go on maternity leave, Regional Manager Card told Skye Preussner that the company decided to transfer another General Manager from Spokane, Jason Pumphrey, to take her place while she was gone, instead of having Operations Manager Muller handle her duties.

16.

Mr. Pumphrey had only three years' experience with Oz Fitness, but was paid more than Skye Preussner.

17.

On August 10, 2009, Skye Preussner began her maternity leave. She was scheduled to return on November 2, 2009.

18.

While Skye Preussner was on maternity leave, Regional Sales Manager Card called her several times to ask if she was really coming back. He seemed convinced she would not. With each call, Skye Preussner assured him that she loved her job and had every intention of coming back when her leave ended.

19.

Skye Preussner also received calls from sales staff who consulted with her for help with their work or to seek advice about issues they were having with replacement worker Jason Pumphrey.

20.

Two of the three sales representatives who had worked under Skye Preussner before her maternity leave left while she was on leave, when they had to work under replacement worker

Pumphrey. The third left for a better job shortly after her return. Replacement worker Pumphrey hired new sales representatives who had little or no experience.

21.

Skye Preussner returned to work as scheduled on November 2, 2009. Instead of returning to Spokane right away, however, replacement worker Pumphrey remained at the Gateway location and shared the General Manager's office with Skye Preussner.

22.

Pumphrey undermined Skye Preussner's authority with his new hires and made it difficult for her to run the facility. Skye Preussner did not understand why he was not returning to Spokane immediately. At last he left on Friday, November 20, 2009, and went back to Spokane. It was the Friday before Thanksgiving.

23.

Without explanation, President Ian Riley returned replacement worker Jason Pumphrey to the Gateway location the Monday after Thanksgiving, November 30, 2009. Pumphrey told Skye Preussner that Ian Riley wanted him to come back.

24.

Two days after that, on December 2, 2009, Regional Operations Manager Danette Winebarger came to visit the club unannounced. Regional Manager Winebarger came into Skye Preussner's office and said that the company had chosen to retain replacement worker Jason Pumphrey as General Manager of the Gateway club, rather than Skye Preussner. She said that he had done better than she had while he had the position.

25.

In fact, while replacement worker Pumphrey was in Skye Preussner's position in August and September, 2009, the facility performed at or near the bottom of all Oz Fitness clubs. In October the club still performed at only 67 percent of goal and lost tens of thousands of dollars.

26.

Skye Preussner was stunned by her termination. She had just had a baby and needed her job. She asked Regional Operations Manager Winebarger to show her the performance numbers, but she would not.

27.

Regional Operations Manager Winebarger offered Skye Preussner a minimum wage position as a fitness counselor. Skye Preussner declined.

28.

Oz Fitness retained Jason Pumphrey in the General Manager position until February, 2010, when they transferred him back to Spokane. At that point, they gave the General Manager's job to Skye Preussner's former Assistant General Manager, Dane Everts, who is male.

29.

On March 15, 2010, Skye Preussner filed a complaint with the Oregon Bureau of Labor & Industries, asserting that Oz Fitness violated her rights to reinstatement to her former position under the Oregon Family Leave Act, and that they discriminated against her because of her sex, in violation of Title VII and ORS 659A.030.

30.

On March 15, 2011, the Bureau of Labor & Industries found in Skye Preussner's favor and issued a notice of substantial evidence of an unlawful employment practice in violation of the Oregon Family Leave Act. The agency issued a 90-day notice of right to sue.

### FIRST CLAIM FOR RELIEF
### (Violation of the Family and Medical Leave Act)

For her first claim for relief, Skye V. Preussner alleges as follows:

31.

Skye Preussner incorporates paragraphs 1 through 30 as if fully set forth herein.

32.

Defendant Oz Fitness was a covered employer under the Family and Medical Leave Act.

33.

Skye Preussner was eligible for protected leave under the Family and Medical Leave Act at the time she took maternity leave.

34.

By failing and refusing to reinstate Skye Preussner into her position as General Manager of the Gateway location after her leave, defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. violated Skye Preussner's rights under the Family & Medical Leave Act, 29 USC § 2614(a).

35.

By failing to reinstate Skye Preussner to her position as General Manager and discharging Skye Preussner from that position in favor of her replacement, defendants Oz Fitness

Or, Inc. and Oz Fitness Holding Corp. interfered with, restrained and denied Skye Preussner's rights under the Family & Medical Leave Act in violation of 29 U.S.C. § 2615(a).

36.

As a result of defendant Oz Fitness's actions, Skye Preussner has lost wages, benefits, and other compensation. These losses are continuing and this Complaint will be amended at the time of trial to state the total amounts.

37.

Defendant Oz Fitness acted willfully in its violation of the FMLA, entitling Skye Preussner to liquidated damages in an amount equal to her lost wages and benefits, together with interest thereon. The amount of liquidated damages to which Skye Preussner is entitled is continuing and will be amended at the time of trial to accurately reflect these damages.

38.

As a further result of defendant Oz Fitness's actions, Skye Preussner is entitled to recover her reasonable costs and attorney fees pursuant to 29 U.S.C. § 2617(a)(3).

## SECOND CLAIM FOR RELIEF
### (Violation of the Oregon Family Leave Act)

For her second claim for relief, Skye V. Preussner alleges as follows:

39.

Skye Preussner incorporates paragraphs 1 through 38 as if fully set forth herein.

40.

Defendants employed twenty-five (25) or more people in the State of Oregon for each working day during each of twenty (20) or more calendar workweeks in 2009.

PAGE 9 - COMPLAINT

41.

Skye Preussner was eligible for protected leave under the Oregon Family Leave Act at the time she took maternity leave.

42.

By failing and refusing to reinstate Skye Preussner into her position as General Manager of the Gateway location after her leave, defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. violated Skye Preussner's rights under the Oregon Family Leave Act, ORS 659A.171 and ORS 659A.183.

43.

Defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. discharged Skye Preussner because she took medical leave, in violation of ORS 659A.183.

44.

As a result of defendant Oz Fitness's actions, Skye Preussner has lost wages, benefits, and other compensation. These losses are continuing and this Complaint will be amended at the time of trial to state the total amounts.

45.

Skye Preussner has also suffered non-economic damages, including emotional distress, anxiety, depression, loss of enjoyment of life, sleeplessness, stress, worry, humiliation, and loss of career opportunities and future earning capacity. These damages are continuing. Skye Preussner is entitled to recover payment for these damages in an amount to be determined by the jury at trial.

46.

As a further result of defendant Oz Fitness's actions, Skye Preussner is entitled to recover her reasonable costs and attorney fees incurred herein pursuant to O.R.S. § 659A.885(1).

### THIRD CLAIM FOR RELIEF
### (Sex Discrimination in Violation of Title VII, 42 U.S.C. 2000e-2)

For her third claim for relief against defendants, plaintiff Skye Preussner alleges:

47.

Skye Preussner incorporates paragraphs 1 through 46 as if fully set forth herein.

48.

By the actions described herein, defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. discriminated against Skye Preussner on the basis of sex.

49.

As a result of defendants' actions, Skye Preussner has lost wages and benefits, including both back pay and front pay. These losses are continuing and this Complaint will be amended at the time of trial to state the total amounts.

50.

Skye Preussner has also suffered non-economic damages, including emotional distress, anxiety, depression, loss of enjoyment of life, sleeplessness, stress, worry, humiliation, and loss of career opportunities and future earning capacity. These damages are continuing. Skye Preussner is entitled to recover payment for these damages in an amount to be determined by the jury at the time of trial but not to exceed $300,000.

51.

The actions of defendants were taken in bad faith, maliciously or with reckless indifference to Skye Preussner's rights, entitling Skye Preussner to punitive damages in an amount to be determined by the jury at the time of trial but not to exceed $300,000.

52.

Skye Preussner is also entitled to recover her reasonable attorney fees and costs incurred herein, together with such other relief as the Court may deem just and equitable.

**FOURTH CLAIM FOR RELIEF**
**(Violation of ORS § 659A.030)**

For her fourth claim for relief against defendants, plaintiff Skye Preussner alleges:

53.

Skye Preussner incorporates paragraphs 1 through 52 as if fully set forth herein.

54.

By the actions described herein, defendants Oz Fitness Or, Inc. and Oz Fitness Holding Corp. discriminated against Skye Preussner on the basis of sex.

55.

As a result of defendant Oz Fitness's actions, Skye Preussner has lost wages and benefits, including both back pay and front pay. These losses are continuing and this Complaint will be amended at the time of trial to state the total amounts.

56.

Skye Preussner has also suffered non-economic damages, including emotional distress, anxiety, depression, loss of enjoyment of life, sleeplessness, stress, worry, humiliation, and loss of career opportunities and future earning capacity. These damages are continuing. Skye

Preussner is entitled to recover payment for these damages in an amount to be determined by the jury at the time of trial.

57.

The actions of defendant Oz Fitness were taken in bad faith, maliciously or with reckless indifference to Skye Preussner's rights, entitling Skye Preussner to punitive damages in an amount to be determined by the jury at the time of trial.

58.

Skye Preussner is also entitled to recover her reasonable attorney fees and costs incurred herein, together with such other relief as the Court may deem just and equitable.

WHEREFORE, plaintiff Skye Preussner prays for judgment against defendant Oz Fitness for the following relief:

1. For her lost wages and benefits, including future losses, in an amount to be determined by the jury at the time of trial, along with prejudgment interest thereon;

2. For liquidated damages in the amount equal to her lost wages and benefits to be determined by the jury at the time of trial, along with prejudgment interest thereon;

3. For non-economic damages in an amount to be determined by the jury at the time of trial;

4. For punitive damages in an amount to be determined by the jury at the time of trial;

5. For reasonable attorney fees and costs incurred herein; and

6. For such other relief as the Court may deem just and proper.

DATED: June 9, 2011.

                              **MIDDLETON & LEE, PC**

                              By: _____
                              Jennifer J. Middleton, OSB 071510
                              jmiddleton@middletonlee.net
                              Middleton & Lee, P.C.
                              245 East 4th Avenue
                              Eugene, OR 97401-2429
                              Telephone:    541/683-2506
                              Fax:               541/683-3149
                                 Attorneys for Plaintiff Skye V. Preussner